DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, in which the trial court denied appellant's motion to intervene in a custody action instituted by Lucas County Children Services ("LCCS") and overruled appellant's objections to the magistrate's decision granting temporary custody of appellant's grandchildren to LCCS.
"On appeal appellant, Shirley T., sets forth the following as her sole assignment of error:
"Assignment of Error No. 1:
 "IT IS ERROR AND AN ABUSE OF DISCRETION TO DENY GRANDPARENT INTERVENTION IN A PERMANENT CUSTODY PROCEEDING WHERE THE GRANDPARENT STOOD IN LOCO PARENTIS UNTIL DAYS BEFORE THE FILING OF THE PERMANENT CUSTODY PETITION."
On May 26, 2000, LCCS filed a complaint in dependency and neglect in which the agency alleged that Lynde P. (D.O.B. November 6, 1991), Ashley T. (D.O.B. August 20, 1993), Briana T. (D.O.B. November 30, 1994) and Christopher T. (D.O.B. November 12, 1995) lived in inadequate housing with their mother, Victoria P. The complaint also alleged that the children were neglected and dependent because Victoria P. could not properly care for them due to her depression and/or drug addiction and suicidal tendencies. The complaint further alleged that Arthur T., father of three of the children, was unwilling to take custody and Tyrone S., alleged father of Lynde P., had no contact with the child.
On May 31, 2000, the magistrate ordered the four children removed from their mother's care and placed in the interim temporary custody of appellant, who is Arthur T.'s mother. Over the next year, LCCS provided services to appellant, the children and Victoria P. However, Victoria remained unable to complete the goals of her case plan. On April 9, 2001, LCCS filed a motion to terminate appellant's temporary custody and award temporary custody to LCCS.
On July 25, 2001, a hearing was held, at which testimony was presented by LCCS caseworker Sherry Dunne and appellant. Dunne testified at the hearing that all four children exhibit problem behaviors, including "acting out" at appellant's home and at school, and bed wetting. Dunne further testified that the children were almost closed out of counseling because appellant did not transport them to all of the their appointments, and appellant left the children in after school care until 9 p.m. on week nights in order to have a respite from the "chaos" in her home. Dunne stated that appellant told her she had problems controlling the behavior of her own 12 year-old son, Kenneth, because she could not give him enough attention due to the demands of caring for the other children.
Dunne testified that appellant wanted temporary custody of the children in the short term; however, appellant told Dunne she would prefer to return the children to their mother in the future. Dunne related that appellant let Victoria P. transport the children to counseling alone, even though visitation with Victoria P. was to be supervised by appellant. Dunne stated that, in her opinion, appellant's desire to keep the children vacillated "depending on what was going on with the kids at that [particular] time." Dunne further stated that she believed the children had behavior problems because they experienced an unstable environment with Victoria P., and they still worry about where they will live in the future.
Appellant testified at the hearing that she wants to care for the children; however, she has researched alternative care givers and wants Victoria P. and her son to "support and help" her with the children. Appellant further testified that she wants legal custody of the children, but she does not want to adopt them and that, alternatively, it would be acceptable for them to go to foster homes so long as appellant approved the homes and could maintain contact with the children. Appellant stated that she is concerned about the quality of potential foster homes for the children, because she is a caseworker for LCCS and is aware of the potential for abuse in foster homes.
Appellant testified that the children are in after school care until 5:30 p.m. She also testified that she is at times "overwhelmed" and "frustrated" from having to deal with so many children while caring for Kenneth, and that she and Kenneth are still grieving due to the untimely death of another one of her children. Appellant stated she would not give the children back to their mother unless Victoria P. completed the goals of her case plan. Appellant expressed concern that she would not pass an adoption home study because of an incident in which Lynde P. had reported physical abuse in appellant's home to LCCS.
At the close of appellant's testimony, a report by Pam Manning, the children's guardian ad litem, was introduced into evidence. In her report, Manning recommended that temporary custody of the children be granted to LCCS. Manning also stated that no additional relatives had been found to take the children, and that permanent placement with the agency was in the children's best interest.
On August 27, 2001, the magistrate issued a decision in which she found that it was in the best interest of the children to award temporary custody to LCCS. The children were thereafter removed from appellant's home and placed in two separate foster homes. On September 5, 2001, LCCS filed a motion in which it asked the court to terminate Victoria P.'s and Arthur T.'s parental rights and grant permanent custody to the agency. On September 10, 2001, appellant filed her objections to the magistrate's decision and, on October 22, 2001, appellant filed a motion for leave to intervene as a party in the permanent custody proceeding.
On October, 23, 2001, Manning filed a supplemental report in which she stated that, since being placed in foster homes, the children were receiving individual therapy and dental treatment and that their behaviors had improved both at home and at school. The report further stated that Victoria P. had not yet completed the goals of her case plan, i.e., to receive drug treatment, counseling, communicate with caseworkers on a regular basis, obtain employment and establish independent housing.
Manning noted that, during the time the children were in appellant's care, appellant failed to attend to their medical and dental needs and did not protect them from abuse by Arthur T. She stated that, in her opinion, appellant was unable to care for the emotional and physical needs of so many children. She opined that if custody of the children were given to appellant, she "would likely return the children to [their mother] once a short time had passed and there was not further LCCS involvement * * *", and that such an action would not be in the best interest of the children. Based on the above, Manning recommended that permanent custody be granted to LCCS, so that "adoption can be pursued to secure stable, secure and permanent environments for these four children."
On December 3, 2001, the trial court denied appellant's objections to the magistrate's report and her motion to intervene as a party. On January 2, 2002, a timely notice of appeal was filed.
In her assignment of error, appellant asserts that the trial court abused its discretion when it denied her motion to intervene as a party in the permanent custody proceedings. Appellant argues that Juv.R. 2 "clearly contemplate[s] that non-parents might be able to achieve the right to participate at all stages of litigation" and the proper procedure for intervening as a party is prescribed by Civ.R. 24(B).
In support of the above argument, appellant claims that she is entitled to party status under Civ.R. 24 (B) and Juv.R. 2 because she stood in loco parentis to the children until nine days before the motion for permanent custody was filed, and no evidence was presented to the court that the children were inadequately fed or housed or were otherwise abused while they were in her care. Appellant further claims that the "long-established preference for relative placements in lieu of permanent custody awards" should have taken precedence over "LCCSB's parade of inconsequential negatives against her."
Juv.R. 2(Z), formerly Juv.R. 2(X), defines a party in a juvenile proceeding as:
 "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court."
Civ.R. 24(B) provides that a person may be permitted to intervene in an action either when a conditional right to intervene is conferred by statute or "when an applicant's claim or defense and the main action have a question of law or fact in common." Id.
We have previously held that a person seeking to intervene in a legal custody proceeding in the juvenile court can do so only under Juv.R. 2.In the Matter of: Kei'Andre P. Qua'Von P. Keionn G. Juanya G. (Feb. 16, 2001), Lucas App. No. L-00-1203. In determining whether to designate a person as a party the juvenile court may use Civ.R. 24 as guideline, but it is not required to do so. Id.
Ultimately, a trial court's decision to grant or deny a motion to intervene in a juvenile case will not be overturned on appeal absent an abuse of discretion. Id. An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In making its decision to deny appellant's motion to intervene and overrule her objections to the magistrate's report, the trial court had before it the record of the hearing held on July 25, 2001. At that time, appellant testified as to her affection for the children, her abilities and limitations in caring for them, and her desire to see them either reunited with Victoria P. or placed in appropriate foster homes. In addition, the court had before it the supplemental report of the guardian ad litem, in which Manning stated that Victoria P. had not met the goals of the case plan, and the children were doing well in the custody of LCCS. Finally, we note that a hearing for permanent custody was held on January 7, 2002 and, on March 14, 2002, the trial court granted permanent custody of the four children to LCCS. That judgment has not been appealed.
Upon consideration of the entire record in this case and the law, this court finds that the trial court did not abuse its discretion in denying appellant's motion to intervene as a party and overruling her objections to the magistrate's report. Appellant's sole assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.